UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHERYL M. NELSON,                    )
                                     )
          Plaintiff,                 )
                                     )
     vs.                             )          Case No. 4:11CV00904 AGF
                                     )
THE SPECIAL ADMINISTRATIVE           )
BOARD OF THE ST. LOUIS PUBLIC        )
SCHOOLS, et al.,                     )
                                     )
          Defendants.                )

**MEMORANDUM AND ORDER**

Plaintiff Cheryl Nelson brings this action against Defendants Kelvin Adams, Rick

Sullivan, and the Special Administrative Board ("the School Board")[1] of the St. Louis

Public Schools ("SLPS"), charging race discrimination, retaliation, and various

constitutional and statutory violations arising out of her employment with the SLPS.

Presently before the Court is Defendants' motion to dismiss Counts I, II, IV, VI, and VII

of Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12

(b)(6).  At the request of the parties, the Court heard oral argument on the motion.  For

the reasons set forth below, Defendants' motion is denied with respect to Count VI, and

granted with respect to Counts I, II, IV and VII.

**Background**

In her Second Amended Complaint Plaintiff alleges the following:

---

[1]     Defendants assert that the correct name for this Defendant is the Special
Administrative Board of the Transitional School District of the St. Louis Public Schools.
Plaintiff is directed to amend her complaint accordingly.

Since 1997, Plaintiff, an African American woman, has been employed in various capacities in the federally funded SLPS Community Education Program (CEP). Since 2009 she has held the position of Community Collaborative Specialist (CCS) and is presently employed by the SLPS.

Defendant Rick Sullivan is the chief executive officer of the School Board and has overall responsibility for the operation of the School Board, which in turn oversees the operations of the SLPS including the execution and enforcement of its policies. Defendant Kelvin Adams is the superintendent of the SLPS, reports to Sullivan, and is responsible for day-to-day management of the SLPS including the execution of SLPS policies.

On or about September 22, 2008, Plaintiff sent a letter to the President of the Saint Louis City Board of Aldermen (the "Board of Aldermen") charging her supervisor, John Windom, with sexual discrimination. (Doc. No. 1-1, attached to Plaintiff's original Complaint. The President of the Board of Aldermen forwarded the letter to Rick Sullivan and to the School Board.

On or about September 26, 2008, Plaintiff received a letter from John Wright, who was the Superintendent of the SLPS at that time, acknowledging receipt of her complaint and assuring Plaintiff that it would be taken "very seriously." (Second Amended Complaint, Doc. No. 48, ¶8.) On October 31, 2008, Plaintiff sent a sixteen page letter to the President of the Board of Aldermen and to Sullivan, Adams, and the School Board alleging sexual discrimination by Windom. In the letter, Plaintiff stated that "Mr.

Windom's combined actions are biased and violates [sic] equal employment opportunities and discriminates against me as a woman." (Doc. No. 48 ¶ 9.)

Outgoing Superintendent Wright responded to Plaintiff's letter and invited her to further discuss her complaints. She declined to do so, stating that Wright, as a friend of Windom, would be biased against her. Plaintiff requested that the incoming superintendent, Kelvin Adams, address her complaint. (Doc. No. 48 ¶10.) On November 12, 2008, Wright sent Plaintiff a letter stating: "[y]our behavior has led me to one conclusion and that is your complaint bears no truth and you have only ill intentions. Please be mindful of the fact that if you are guilty of making false accusations against Mr. Windom you could place your employment at risk and a liable [sic] suit from Mr. Windom." (Doc. No. 48 ¶10; Doc. No. 52-1.)

On December 26, 2008, the Director of Human Resources for the SLPS advised Plaintiff that she was aware of her complaint and criticized her for communicating the complaint to the Board of Aldermen. In Plaintiff's May 12, 2009 performance evaluation, Windom recommended termination[2] because Plaintiff "sent a letter outside the [SLPS'] grievance procedure regarding her negative view of [his] behavior." (Doc. No. 48 ¶12.) Plaintiff asserts that Defendants failed to further investigate her complaint or issue a determination with respect to it.

Fifteen months later, on August 27, 2010, Plaintiff, while performing her duties as a CCS at the Ford Elementary School, was approached by Saint Louis City police

---

[2] Plaintiff does not allege and the record does not indicate that she was in fact terminated.

officers, restrained and charged with a criminal offense. School security personnel forcibly escorted Plaintiff from the building in view of persons residing in the neighborhood served by the school. The police officers advised Plaintiff that she was being arrested and charged with criminal behavior on the basis of an allegation by the SLPS. After her arrest, Plaintiff was placed on administrative leave and given a three-day suspension. "Police and prosecuting authorities" determined that there were no grounds to pursue the charges against her. (Doc. No. 48 ¶ 15.)

After the filing of this lawsuit, Plaintiff obtained records indicating that a white, female co-worker who holds the same position and title as she, has received since 2008 an annual salary at least $20,000 greater than Plaintiff's salary. Plaintiff amended her complaint to allege that Defendants paid her a lower salary or failed to increase her salary, in retaliation for Plaintiff's filing of discrimination charges.

Plaintiff initially filed this action in the Circuit Court for the City of Saint Louis on April 15, 2011. On April 18, 2011, Plaintiff filed a charge of discrimination with the Missouri Commission on Human Rights alleging retaliation and sex, race, disability, and age discrimination and referencing her complaint in the lawsuit filed in the Circuit Court for the City of Saint Louis as the factual basis for her charge.[3] (Doc. No. 9-2.) The April 18, 2011 charge asserts a continuing violation and lists the last date of discrimination as February 22, 2011. Defendants removed the suit to this Court on May 19, 2011. On August 9, 2011, Plaintiff filed another charge of discrimination, this time with the EEOC,

---

[3] In her Second Amended Complaint Plaintiff abandoned her claims under the Missouri Human Rights Act.

4

alleging race discrimination, retaliation, and equal pay violations and referencing the allegations in her complaint related to the pay inequity. (Doc. No. 52-3.) A right to sue letter issued on November 4, 2011.

On the basis of the foregoing allegations, Plaintiff asserts: in Count I, that Defendants deprived her of her due process rights under the Fourteenth Amendment in violation of 42 U.S.C. §1983; in Count II, under 42 U.S.C. § 1983, that Defendants retaliated against her in violation of her rights under the First Amendment for pursuing her grievance against the SLPS; in Count III, intentional discrimination on the basis of race in violation of 42 U.S.C. § 1981; in Count IV, that Defendants, the recipients of federal funds, discriminated against her on the basis of race in the distribution of those funds in violation of 42 U.S.C. § 2000d-1, ("Title VI"); in Count V, discrimination on the basis of race in violation of 42 U.S.C.§ 2000e ("Title VII" ); in Count VI, that Defendants retaliated against her for exercising her rights under Title VII; and in Count VII, that Defendants violated her rights under 29 U.S.C. § 206(d) ("the Equal Pay Act") by paying her less than a similarly situated white female employee.[4]

## Legal Standard:  Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, which if accepted as true, 'state[s] a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

---

[4]     Defendants do not move to dismiss Count III (§1981 claim) or Count V (Title VII claim for discrimination on the basis of race).

550 U.S. 544, 570 (2007)).  In her complaint, a plaintiff "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir.2008) (citing *Twombly*, 550 U.S. at 555 & n. 3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Rather, the complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quotation omitted).

    In ruling on a motion to dismiss, the Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir.2008) (citing *Luney v. SGS Auto. Servs., Inc.*, 432 F.3d 866, 867 (8th Cir.2005)).  Materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint.  *Droney v. Fitch*, No.4:10-CV-114 CAS, 2011 WL 890704, at* 2 (E.D. Mo. Mar.14, 2011) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986)).  In addition, although "'matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading.'" *Ashanti v. City of Golden Valley,* 666 F.3d 1148, 1150-51(8th Cir. 2012) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (quotations omitted)).  Documents necessarily embraced by the pleadings include those "documents whose contents are alleged in a complaint and whose authenticity no party

questions, but which are not physically attached to the pleading." *Ashanti,* 666 F.3d at 1151 (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (citation omitted)).

__Analysis__

__Due Process Violations__

In Count I Plaintiff asserts that Defendants violated § 1983, depriving her of her constitutional rights under the Fourteenth Amendment to due process of law, by failing to investigate and resolve her charge of sex discrimination in accordance with SLPS Policy R4805 and other unspecified policies.[5] With less clarity, Plaintiff also alleges that she was deprived of a liberty or property interest as a result of the stigmatizing effect of her arrest, subsequent placement on administrative leave, and the imposition of a three-day suspension. Defendants move to dismiss, asserting that Plaintiff has not shown the existence of, or damage to, a property or liberty interest as required to state a claim for a violation of her due process rights.

To recover under § 1983, a plaintiff must prove "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001) (*citing Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 403-04(1997)). The Fourteenth Amendment guarantees procedural due process before the State may "deprive any person of life, liberty, or property." U.S. Const. amend XIV, § 1.

---

[5] Plaintiff does not identify or specifically allege the language or import of the other policies. The Court therefore addresses only R4805.

To prove a procedural due process violation, a plaintiff must establish that a protectable interest is implicated and that due process was not afforded in the deprivation of that interest. *See Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 569-70 (1972).

The "'[a]nalysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated.'" *McDonald v. City of Saint Paul*, ___ F.3d ___, 2012 WL 1623555, at *3 (8th Cir. May 10, 2012) (quoting *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 445-46 (8th Cir.1995)(citation omitted)). "'The possession of a protected life, liberty or property interest is a condition precedent to the government's obligation to provide due process of law, and where no such interest exists, there can be no due process violation.'" *McDonald,* 2012 WL 1623555, at *3 *(quoting Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir.1997) (citation omitted)). Property interests "'are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *McDonald,* 2012 WL 1623555, at *3 (quoting *Roth*, 408 U.S. at 577 (1972)); *see also Craft v. Wipf*, 836 F.2d 412, 417 (8th Cir.1987) (citations omitted) (noting that "[a] state may also create a constitutionally protected interest by establishing statutory or regulatory measures that impose substantive limitations on the exercise of official discretion."). "A protected property interest exists where a plaintiff has a legitimate claim of entitlement to a benefit that is derived from a source such as state law." *Schueller v. Goddard*, 631 F.3d 460, 462–63 (8th Cir.2011) (citations and internal quotations omitted).

Plaintiff alleges that she has a property interest in SLPS Policy R4805 ("R4805"), which provides that an SLPS employee may appeal any unfair work treatment by filing a complaint and that "any employee who feels he/she has been unfairly treated has the right to appeal through successively higher supervisors or administrators up to the superintendent of schools or his/her representative. An employee may also file an appeal . . . under applicable federal and state laws and policy statements."

Plaintiff does not identify and the Court is unaware of any previously recognized "legitimate claim of entitlement" deriving from R4805. Conducting its own analysis, the Court finds that at most R4805 affords Plaintiff a right to appeal any complaint of unfair treatment through successively higher levels of authority within the SLPS and/or to pursue her remedies under state and federal law.

Plaintiff's allegations and the materials attached to and referenced in the pleadings indicate that she has been afforded the opportunity to file a complaint and to appeal to higher authorities within the SLPS. The Court cannot conclude that she has any legitimate claim of entitlement arising from R4805 apart from the measures she has already been afforded. R4805 places no obligations on Defendants, and Plaintiff has not alleged facts indicating that Defendants interfered with its operation.

The correspondence referenced by Plaintiff in her complaint supports the notion that she was afforded the opportunity to file a complaint and to appeal that complaint as set forth in R4805; she simply chose not to do so. Dr. Wright's November 12, 2008 letter referenced in Plaintiff's complaint reveals that Plaintiff was offered the opportunity to

pursue her complaint within the SLPS. (Doc. No. 52-1.) She declined to pursue the complaint during Dr. Wright's tenure, but did nothing to renew or continue the process under his successor. The letter from the Human Resources Officer referenced by Plaintiff in her complaint similarly invites Plaintiff to pursue her complaint against Windom through the SLPS and explains that the Board of Aldermen have no authority to consider that complaint. (Doc. No.52-2.) Plaintiff does not allege that she took any additional steps after that time to pursue the complaint within the SLPS.

On the basis of this analysis, the Court concludes that Policy R4805 does not give rise to a property interest for purposes of a due process violation. In addition, the Court concludes that even if Plaintiff is presumed to have alleged a property interest subject to protection under the Fourteenth Amendment, she has neither alleged, nor shown that discovery is likely to reveal, facts indicating that Defendants acted in any way to deprive her of due process by interfering with her ability to exercise her rights under R4805.

The Court will also consider whether Plaintiff has alleged a protectable liberty interest arising from the alleged stigmatizing effect of her arrest and the ensuing three-day suspension. To establish a procedural due process claim for deprivation of a protected liberty interest in her reputation, Plaintiff, as a public employee, must demonstrate that "'(1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; and (4) that there was also an alteration or extinguishment of a right or legal status.'" *Crooks v. Lynch*, 557 F.3d 846, 849 (8th Cir. 2009) (quoting

*Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir.2007) (internal citations omitted).  Where

a liberty interest is found "[a] procedural due process right to a name clearing hearing

arises if a plaintiff alleges that she requested and was denied such a hearing."

*Christiansen v. West Branch Comty. School Dist.*, 674 F.3d 927, 934 (8th Cir. 2012)

(citing  *Winskowski v. City of Stephen*, 442 F.3d 1107, 1112 (8th Cir. 2006)); *see also*

*Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).  However, if the hearing

mandated by the Due Process Clause is to serve any useful purpose, there must be some

factual dispute between an employer and the affected employee which has some

significant bearing on the employee's reputation.  *See Stodghill v. Wellston School Dist.*,

512 F.3d 472, 476 (8th Cir. 2008); *see also Pollock v. Baxter Manor Nursing Home,* 706

F.2d 236, 237 (8th Cir. 1983).

 Here Plaintiff alleges a stigmatizing incident:  her public arrest on the basis of a

report from the SLPS, followed by placement on administrative leave and a three-day

suspension.  Plaintiff has not, however, alleged that she was discharged[6] after the arrest or

that she experienced any ongoing alteration of her status as an employee following the

arrest.  Nor has she alleged a persisting factual dispute with her employer relating to her

arrest.  The allegations indicate that Plaintiff returned to work after the three-day

administrative leave and that no charges were brought against her in connection with the

---

  [6] Although the suspension of a public employee has been deemed an adverse
employment action, *see McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1137 (8th
Cir. 2006), Plaintiff has not alleged any consequences flowing from the brief suspension
that "distinctly altered" her status as a public employee and would therefore supply the
additional element necessary to establish a protectable interest under the Fourteenth
Amendment.  *See Paul v. Davis*, 424 U.S. at 701-02, 711.

arrest.  There is no indication that a record of the arrest was ever incorporated into her personnel file.  Moreover, even if Plaintiff had adequately pled facts giving rise to stigmatizing injury cognizable under the Due Process Clause, she does not allege that she ever requested or was refused an opportunity for a name-clearing hearing.  The absence of such allegations is fatal to Plaintiff's claim for violation of the Due Process Clause based upon her arrest and suspension.  *Crooks*, 557 F.3d at 849.

On the basis of the foregoing, Defendants' motion to dismiss will be granted with respect to Count I.

## Section 1983 Claim: Retaliation for the Exercise of First Amendment Rights

In Count II Plaintiff asserts that Defendants, in retaliation for Plaintiff's exercise of her rights under the First Amendment, violated those rights by: failing to process her complaint of sexual discrimination in accordance with School Board policies, specifically Policy R4843;[7] threatening legal action; seeking her termination; having her arrested without just cause; placing her on administrative leave; and denying her the same pay as her white female counterpart.[8]  Defendants move to dismiss asserting that Plaintiff's communication with the Board of Alderman did not address a matter of public concern and is not therefore protected speech under the First Amendment.

---

[7]   Plaintiff references this policy in ¶ 25 of the Second Amended Complaint but nowhere alleges its content or requirements.

[8]   Plaintiff also alleges that these same acts are violations of  "state public policy."  (Doc. No. 48 ¶ 25.)

To establish a prima facie case of retaliation for the exercise of her First Amendment rights, a plaintiff must prove that (1) her speech was protected by the First Amendment; (2) the governmental employer discharged her from employment; and (3) that the protected speech was a "substantial or motivating" factor in the defendant's decision to discharge the plaintiff. *Rynders v. Williams,* 650 F.3d 1188, 1194 (8th Cir. 2011); *Davison v. City of Minneapolis, Minn*., 490 F.3d 648, 654-55 (8th Cir. 2007).

The First Amendment guarantees every citizen a right to engage in free speech, without governmental restriction. *See Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007). A public employer may not penalize an employee for the exercise of her constitutionally protected right to freedom of speech, because "public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *see also McGee v. Pub. Water Supply, Dist. No. 2 of Jefferson Cnty., Mo.*, 471 F.3d 918, 919 (8th Cir. 2006) (citation omitted). Rather, "[a] public employee retains a degree of First Amendment protection when [she] speaks as a citizen addressing matters of public concern." *Bonn v. City of Omaha*, 623 F.3d 587, 592 (8th Cir. 2010).

The court must therefore determine whether the employee's speech may be characterized as speech on a "matter of public concern." *Garcetti*, 547 U.S. at 417 (citations omitted). "'[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id.,* 547 U.S. at 420-21 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)). It is therefore well established that speech which "deal[s] with personnel matters" generally will not be

deemed to address matters of public concern. *Belk v. City of Eldon,* 228 F.3d 872, 879 (8th Cir. 2000). "The inquiry into the protected status of speech is one of law, not fact." *Connick*, 461 U.S. at 148 n.7.

Accepting the allegations in the complaint as true and taking into account all matters appended to, or referenced in, the pleadings, the Court concludes that the letters Plaintiff sent to the Board of Aldermen are not protected speech within the meaning of the First Amendment[9]. In her complaint Plaintiff specifically references the statement in the first letter providing that "Windom's combined actions are biased and violates [sic] equal employment opportunities and discriminates [sic] against me as a woman." This language asserts neither a pervasive atmosphere of sex discrimination nor a general policy by Windom to discriminate against female employees. The remainder of the letter does not alter this conclusion. Plaintiff's complaints are purely personal, addressing only Windom's alleged discriminatory actions against her. Plaintiff nowhere alleges that Windom's conduct affects anyone other than her or that it represents a systemic issue within the organization or a generalized matter of concern to the public. *See, e.g.*, *Wingate v. Gage County School Dist., No. 34*, 528 F.3d 1074,1080-81 (8th Cir. 2008) (holding that "[w]here a public employee speaks out in public or in private on matters that relate solely to the employee's parochial concerns as an employee, no First Amendment interests are at stake.") (citations omitted); *Bailey v. Dep't of Elem. & Secondary Educ.*,

---

[9] Because Plaintiff was not speaking "as a citizen," the Court need not determine whether the speech survives the *Pickering* balancing test. *McGee*, 471 F.3d at 920, n.2.

451 F.3d 514, 520 (8th Cir. 2006) (finding that an employee's letter of complaint primarily involving personal conflicts with a supervisor was not speech on a matter of public concern); *Cox v. Dardanelle Pub. Sch. Dist.*, 790 F.2d 668, 672 (8th Cir. 1986) (finding no protected speech where the employee spoke on "internal policies or practices which are of relevance only to the employees of that institution"); *see also David v. City and County of Denver*, 101F.3d 1344,1356 (10th Cir. 1996) (holding that complaints asserting sexual harassment as a personal grievance rather than widespread practice affecting an employer's performance of its public responsibilities were not speech on a matter of public concern). On the basis of the foregoing, the Court finds that Plaintiff 's letters and complaints regarding Windom's alleged conduct do not implicate her rights under the First Amendment, and Count II should be dismissed for failure to state a claim.

**The Title VI Claim**

In Count IV Plaintiff asserts that Defendants, recipients of federal funding for the operation of the CEP, discriminated against her in violation of 42 U.S.C. § 2000d-1 ("Title VI"), by paying Plaintiff less than a similarly situated white employee solely on the basis of her race.[10] Defendants contend that Plaintiff lacks standing to assert a claim under Title VI because the intended beneficiaries of the funds provided for the CEP are the students enrolled in the program, and not the CEP employees.

---

[10] Section 601 of Title VI provides in pertinent part that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d-1.

To establish a prima facie case under Title VI, a plaintiff must demonstrate that her race, color, or national origin was the motive for the alleged discriminatory conduct. *See McCoy v. Bush,* No. 1:12CV39 LMB, 2012 WL 942301, at *1 (E.D. Mo. Mar. 20, 2012) (citing *Thompson v. Bd. of Special Sch. Dist. No. 1*, 144 F.3d 574, 578–79 (8th Cir. 1998)). Individuals may sue under Title VI for intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Freeman v. Fahey*, 374 F.3d 663,666 (8th Cir. 2004). However, as interpreted by the Eighth Circuit, the statute provides that a plaintiff may allege a Title VI claim in the employment context only where the statutory grant of funds or the federally assisted program at issue is specifically intended to provide employment. *See Valentine v. Smith*, 654 F.2d 503, 512 (8th Cir. 1981) (stating that Section 2000d-3 limits employment discrimination claims under Title VI to situations where the federal assistance is designed to provide employment.); *see also Bissada v. Arkansas Children's Hosp.*, No. 4:08CV00362 JLH, 2009 WL 1010869, at *11 (E.D. Ark. Apr. 14, 2009)*; Weller v. Legal Aid of Western Missouri*, No. 05-0041CVWFJG, 2005 WL 2090781, at*4 (W.D. Mo. Aug. 30, 2005).

Plaintiff has not pled that the CEP is a program designed to provide employment and there is no indication that discovery would reveal that its purpose is anything other than the provision of educational services. *Baugh v. Ozarks Area Community Action Corp.*, No. 09-03177-CV-S-DGK, 2010 WL 1253718 , at*4 (W.D. Mo. Mar. 31, 2010) (requiring Plaintiff to plead that the program in question receives federal funds "for the primary objective of providing employment.") (internal quotations omitted). The Court therefore concludes that Plaintiff's claim for relief under Title VI should be dismissed.

**Retaliation in Violation of Title VII**

In Count VI, a claim for retaliation under Title VII, Plaintiff alleges that Defendants "deliberately denied [her] the compensation due her in retaliation for her filing [of] discrimination charges against SLPS." (Doc. No 48 at ¶ 49.) Defendants move to dismiss, asserting that Plaintiff is unable to state a claim for retaliation under Title VII because she cannot establish the required causation element or in the alternative that the claim is barred by the applicable statute of limitations.

Section 704(a) of Title VII makes it unlawful for an employer to "discriminate against any . . . [employee] . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge" of discrimination against the employer. 42 U.S.C. § 2000e–3(a). *See Gibson v. American Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012) (citing *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1119 (8th Cir. 2006)). To establish a prima facie case of retaliation under Title VII, an employee must show that she engaged in protected activity; that she suffered a materially adverse action that would deter a reasonable employee from making charge of employment discrimination; and the existence of a causal connection between the protected activity and the adverse action. *See Lewis v. Heartland Inns of Am., LLC*, 591 F.3d 1033, 1042 (8th Cir. 2010) (quoting *Wallace*, 442 F.3d at 1119). With respect to the causal connection, a plaintiff must show that the protected conduct was a "'determinative—not merely motivating—factor in the employer's adverse employment decision.'" *Tyler v. University of Arkansas Bd. of Trustees,* 628 F.3d 980, 985-86 (8th Cir. 2011) (quoting *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008)).

Pursuant to 42 U.S.C. § 2000e-(5)(e)(3)(A), a plaintiff must file a charge of discrimination within 300 days of an alleged discriminatory act. Conduct occurring more than 300 days before the filing of the charge of discrimination is not grounds for a suit unless it is part of a continuing violation arising from conduct which is "systemic or serial." *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999) (citing *Kimzey v. Wal–Mart Stores, Inc.*, 107 F.3d 568, 572-73 (8th Cir. 1997))*; see also Grover v. Smarte Carte, Inc.*, No. 09–3282 (SRN/FLN), 2011 WL 6739502, at *9 (D. Minn. Dec. 22, 2011).

Pursuant to the 2009 amendments to Title VII known as the Lilly Ledbetter Fair Pay Act ("the LLA"), 42 U.S.C. § 2000(e)-5(3)(A), for purposes of a retaliation claim under Title VII, an unlawful employment practice occurs at the time of a discriminatory compensation decision as well as each time compensation is paid pursuant to that discriminatory decision.[11] Under the LLA, liability accrues, and a plaintiff may recover, back pay for up to two years preceding the filing of the charge of discrimination.[12]

---

[11] The Lilly Ledbetter Fair Pay Act of 2009, amends Section 706(e) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(e)) by adding the following:

> (3)(A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or **when an individual is affected by application of a discriminatory compensation decision** or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice. (Emphasis supplied)

[12] The LLA also provides in pertinent part:

> (B) . . .[L]iability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two

Plaintiff alleges in Count VI that the retaliatory conduct, "denial of the compensation due her," began in 2008. (Id. ¶¶ 46&49.)  Plaintiff also alleges that she made complaints about sex discrimination by SLPS personnel as early as September 2008 and filed formal charges of discrimination on April 18, 2011, and August 9, 2011.

Construing Plaintiff's allegations in the most favorable light, the Court finds that she has adequately alleged a Title VII retaliation claim arising from her 2008 complaints of sex discrimination and resulting in Defendants' decision to compensate her at a lower rate of pay than her white counterpart.  Whether or not causation can be demonstrated at a later stage of these proceedings, the necessary causation is alleged in the complaint.  Moreover, the Court finds that Plaintiff's retaliation claim is timely because under the LLA each instance of payment at the lower salary constitutes a continuing violation actionable under Title VII.  *See* 42 U.S.C. § 2000e-5(3)(A).  Although the initial retaliatory act, the decision to compensate Plaintiff at a lower salary, may have occurred more than 300 days prior to the filing of either charge of discrimination, under the LLA each subsequent instance of discriminatory compensation is actionable, and Plaintiff may recover back pay for up to two years preceding the filing of the charge of discriminatory retaliation.  *Id.* at § 2000e-5(3)(A)&(B).  Therefore,  the Court concludes that Defendants' motion to dismiss Count VI will be denied.

years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

**Violation of the Equal Pay Act**

In Count VII, Plaintiff alleges a claim under the Equal Pay Act, 29 U.S.C. § 206(d) , predicated on the higher salary paid to a white, female employee who holds the same position as Plaintiff. To establish a claim under the Equal Pay Act, a plaintiff must show that she was paid less than a male employed in the same establishment, for equal work on jobs requiring equal skill, effort, and responsibility, which were performed under similar working conditions. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). The Equal Pay Act is intended to assure that men and women performing substantially equal jobs are paid equal wages. *Krenik v. County of Le Sueur*, 47 F.3d 953, 961 (8th Cir.1995).

As Defendants correctly assert, Plaintiff here fails to allege a violation of the Equal Pay Act because she alleges that a female, rather than a male, employee was paid more than she for performing the same tasks. *See Hunt v. Nebraska Public Power Dist.,* 282 F.3d 1021,1029 (8th Cir. 2002). Count VII will therefore be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss Counts I, II, IV, and VII of Plaintiff's Second Amended Complaint (Doc. No. 51) for failure to state a claim is **GRANTED** with respect to Counts I, II, IV and VII, and **DENIED** with respect to Count VI**.**

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 4th day of June, 2012.