UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| CHERYL M. NELSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:11CV00904 AGF |
| THE SPECIAL ADMINISTRATIVE BOARD OF THE ST. LOUIS PUBLIC SCHOOLS, et al., | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

Plaintiff Cheryl Nelson filed this action against Defendants Kelvin Adams, Rick Sullivan, and the Special Administrative Board ("the School Board") of the St. Louis Public Schools ("SLPS"), charging race discrimination, retaliation, and various constitutional and statutory violations arising out of her employment with the SLPS. By previous order the Court dismissed Counts I, II, IV and VII of Plaintiff's Second Amended Complaint for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).

Now before the Court are motions to strike filed by each party and Defendants' motion for summary judgment with respect to Counts III, V and VI. In Counts III and V, Plaintiff asserts claims under 42 U.S.C. § 1981 and Title VII, respectively, that she was paid less than a white, female co-worker due to her race, and that her supervisor John Windom discriminated against her because she was a woman. In Count VI, arising under

Title VII, Plaintiff asserts that she was paid less than her white, female and male co-workers in retaliation for asserting a claim of sex discrimination.

At Plaintiff's request, the Court heard oral argument on the motion. Following oral argument, the Court permitted Plaintiff to file a supplemental information with respect to a factual assertion made at oral argument, and allowed Defendants the opportunity to respond to that filing. For the reasons set forth below, the motions to strike will be denied and Defendants' motion for summary judgment with respect to Counts III, V, and VI will be granted.

**Defendants' Motion to Strike Plaintiff's Statement of Uncontroverted Facts**

Defendants move to strike the statement of uncontroverted facts (Doc. No. 91) filed by Plaintiff in opposition to Defendants' motion for summary judgment, on the grounds that Local Rule 7-4.01 does not permit such a filing and that even if the filing were permitted, Plaintiff has failed to substantiate, in accordance with Federal Rule of Civil Procedure 56, the facts they identify as disputed. Defendants further assert that by operation of Local Rule 7-4.01 they are entitled to prevail on their motion for summary judgment because Plaintiff has admitted all but four of the seventy-nine undisputed material facts Defendants offered in support of their motion for summary judgment (Doc. No. 87) and has failed to properly dispute the remaining four by citing to any contradictory evidence in the record to support her denials as required by Rule 56. Doc. No. 91.

Federal Rule of Civil Procedure 12(f) authorizes a court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." A "pleading," as defined in Fed. R. Civ. P. 7(a), does not include statements of fact submitted in support of, or in resistance to, a motion for summary judgment. Thus, there is no specific authority in the Federal Rules for striking a party's statement of uncontroverted facts. *See United States v. Hawley*, 812 F. Supp. 2d 949, 962 n.2 (N. D. Iowa 2011) (denying a motion to strike statement of material facts offered in opposition to a motion for summary judgment).

The Local Rules of this District do, however, permit the striking of filings which fail to comply with their requirements. *See Haley v. CMS*, No. 1:09-CV-144-SNLJ, 2012 WL 4108924, at *1 (E.D. Mo. Sept. 19, 2012). With respect to materials filed in support of a motion for summary judgment, Local Rule 7-4.01(E) provides as follows:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

As stated above, Local Rule 7-4.01(E) specifically provides that "[e]very memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists." Therefore, the Court rejects Defendants'

3

contention that the statement of material facts in opposition is not authorized.

Plaintiff's failure to properly controvert Defendants' statement of undisputed material facts by specific reference and citation to matters in the record is more troubling. Plaintiff has not properly supported the facts she disputes. Due to this failure, the Court could properly deem all of Defendants' statements of fact admitted as set forth in Local Rule 7-4.01(E) and grant summary judgment for Defendants on this basis. Plaintiff is required to follow the Court's rules, and this local rule is no exception. Nonetheless the Court will examine the entire record, including Plaintiff's statement of uncontroverted facts and any properly supported factual contentions in opposition, to determine whether there are genuine disputes regarding material facts precluding the entry of summary judgment. *Haley*, 2012 WL 4108924, at *1.

On the basis of the foregoing, Defendants' motion to strike is denied.

**Plaintiff's Motion to Strike**

Plaintiff moves to strike Defendants' post-argument filing (Doc. No. 107) on the ground that it contravenes the Court's direction to the parties regarding the proper scope of the post-argument filings. Defendants respond that the filing complies with the Court's direction and further note that Plaintiff has little basis for such a complaint as she has persisted, throughout the course of this litigation, in introducing new issues and theories of recovery in almost every filing.[1]

---

[1] The Court also notes that Plaintiff, contrary to the Court's direction, and without leave of court, filed a second post-argument brief.

The Court agrees with Defendants' assertion regarding Plaintiff's penchant for introducing new theories and factual bases for recovery, and further notes that Plaintiff's post-argument filing includes matters that were not in the Court record, contrary to what the Court permitted. Nevertheless, the Court finds that Defendants' filing, for the most part, is reasonably responsive to Plaintiff's post-argument filing, and does not contain "redundant, immaterial, impertinent, or scandalous matter" warranting a grant of the motion under Rule 12(f). As such, Plaintiff's motion to strike Defendants' post-argument filing shall be denied.

**Defendants' Motion for Summary Judgment**

**Background**

The record before the Court establishes the following undisputed facts:

Plaintiff, a black female, has been employed as a Community Collaborative Specialist ("CCS") by the SLPS in its Community Education Program since 1999. (Doc. No. 87-1 at 47.) Plaintiff has a college degree but does not have a degree in education or social work, and had no prior work experience in community affairs or education when she was hired by the SLPS. (*Id*. at 35-36.)

Defendant Rick Sullivan is the chief executive officer of the School Board and has overall responsibility for the operation of the School Board, which in turn oversees the operations of the SLPS including the execution and enforcement of its policies. Defendant Kelvin Adams is the superintendent of the SLPS. He reports to Sullivan, and

is responsible for day-to-day management of the SLPS including the execution of SLPS policies.

Salaries for the CCSs are set by the SLPS human resources department on the basis of an individual's qualifications and overall experience in the relevant field prior to being employed by the SLPS. (Doc. No. 87-2 ¶ 4-5; Doc. No. 87-3, at 75, 77-78.) John Windom, Plaintiff's supervisor, had no authority to set CCS salaries. (*Id.*) From 1999-2011, with the exception of the years 2003 and 2004, (a time period not relevant to this suit), Plaintiff received a salary increase of approximately 3% per year. (Doc. No. 87-2.)

In September 2008, the SLPS named Plaintiff as the CCS for the Ford School at an annual salary of $45,739. This salary represented a 3% increase over the previous school year. On or about September 22, 2008, Plaintiff sent a letter to the President of the Saint Louis City Board of Aldermen (the "Board of Aldermen") charging Windom with sexual discrimination. The President of the Board of Aldermen forwarded the letter to Rick Sullivan and to the School Board. On or about September 26, 2008, Plaintiff received a letter from John Wright, Superintendent of the SLPS at that time, acknowledging receipt of her complaint and assuring Plaintiff that it would be taken seriously. On October 31, 2008, Plaintiff sent another letter to the Board of Aldermen and to Sullivan, Adams, and the School Board alleging sexual discrimination by Windom. In the letter, Plaintiff stated that "Mr. Windom's combined actions are biased and violates [sic] equal employment opportunities and discriminates against me as a woman." (Doc. No. 48 ¶ 9.)

Wright responded to Plaintiff's second letter and invited her to further discuss her complaints. She declined to do so, stating that Wright, as a friend of Windom, would be biased against her. Plaintiff requested that the incoming superintendent, Kelvin Adams, address her complaint. (*Id.* at ¶10.) On November 12, 2008, Wright sent Plaintiff a letter stating: "[y]our behavior has led me to one conclusion and that is your complaint bears no truth and you have only ill intentions. Please be mindful of the fact that if you are guilty of making false accusations against Mr. Windom you could place your employment at risk and a liable [sic] suit from Mr. Windom." (*Id.*; Doc. No. 52-1.) In Plaintiff's May 12, 2009 performance evaluation, Windom recommended termination because Plaintiff "sent a letter outside the [SLPS'] grievance procedure regarding her negative view of [his] behavior." (Doc. No. 48 ¶12.) Plaintiff was not terminated and received a 3% salary increase in July of 2009. (Doc. No. 87-2 ¶ 50.)

On April 18, 2011, Plaintiff filed a charge of discrimination with the Missouri Commission on Human Rights alleging retaliation and sex, race and age discrimination and referencing her complaint in this suit as the factual basis for her charge. In a subsequent charge of discrimination filed on August 9, 2011, Plaintiff asserted that the SLPS took no remedial action after she filed a formal complaint in July 2011 asserting that she was paid less than Patrice Crotty, described as a similarly situated white female also employed as a CCS. Plaintiff asserted that this failure to increase her salary evidenced continuing retaliation by the SLPS in response to her claims, first raised in October 2008, of sex discrimination by Windom.

In April 2011, the SLPS employed 13 CCSs, five black women, four black men, three white women, and one white man. (*Id.* ¶¶ 8, 14, 20, 26, 32, 36, 42.) Seven of these employees earned more than Plaintiff, and of those seven, five are black and two are white. *Id.* In 2011, Plaintiff's salary was approximately $47,000; six of the seven employees who made more than she earned approximately $70,000. (*Id.* ¶ 50.) The six higher-paid CCSs have been employed by SLPS for at least four, and as many as nine, years longer than she has. All CCSs who now earn more than Plaintiff have earned more than she does since the outset of their employment.

Patrice Crotty, the white female CSS who earns more than Plaintiff identified by Plaintiff in her filings, has been employed by SLPS five years longer than Plaintiff. (Doc. No. 87-2, ¶¶ 30-32.) Similarly, the white male CCS who earns more has been employed fourteen years longer than she. (*Id.* ¶ 6.) The seventh employee who makes more than Plaintiff does, a black female, was hired at the same time as Plaintiff, but unlike Plaintiff, had nine years of relevant work experience prior to her date of hire and holds a bachelor's degree in education and a master's degree in public administration. Due to this experience and these credentials this CCS has always earned more than Plaintiff. (*Id.* ¶ 56.)

The CCS who earns the same salary as Plaintiff is a black male who was hired in the same year as Plaintiff and has always made the same salary that she does.

Four CCSs earn less than Plaintiff does. Two are black and two are white. Two are female and two are male. Prior to 2008, at least one of these employees, Patricia

8

Frost, a white female, was categorized as an assistant CCS. During the time period relevant to the discrimination alleged here, Croft and the other CCSs who earn less than Plaintiff held the same title and performed the same functions as Plaintiff. (Doc. No. 107-1 at 13-15.) These employees were hired between four and seven years after Plaintiff, earn about $9000 a year less than she does, and have always earned less than she does. Frost was hired as in July, 2004, approximately five years after Plaintiff. (Doc. No. 107-1 at 13-15; Doc. No. 107-2 at 22.)

**Legal Standard: Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010). In this context, a court is not permitted to "weigh evidence or make credibility determinations." *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

The initial burden of demonstrating the absence of a genuine issue of material fact rests on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Gibson*

9

*v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)). However, "'[m]ere allegations not supported with specific facts are insufficient to establish a material issue of fact and will not withstand a summary judgment motion.'" *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1095 n.3 (8th Cir. 2007) (quoting *Henthorn v. Capitol Commc'n, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004)). Only the existence of a "genuine issue of material fact" will defeat a summary judgment motion. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,m 247-48 (1986)). An issue of fact is genuine if it has a real basis in the record, and a genuine issue of fact is material if it "'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

Where, as here, a plaintiff offers no evidence of direct discrimination, her claims of discrimination will be analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp*. v. Green, 411 U.S. 792, 802-03 (1973). Under that rubric, Plaintiff must show that she is a member of a protected class; was meeting the legitimate expectations of the SLPS; and suffered an adverse employment action. *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012). In addition, Plaintiff must demonstrate circumstances giving rise to an inference of discrimination, specifically that similarly situated employees, who were not members of her protected group, were treated differently than she. *Id*. at 956. Similarly situated employees must be "similar in all relevant respects." *Chism v. Curtner*, 619 F.3d 979, 984 (8th Cir. 2010) (quoting *Fields*

*v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008)).

To establish a prima facie case of retaliation, Plaintiff must show that she engaged in protected activity; that an adverse employment action was taken against her; and that a causal connection exists between the two events. *See Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012) (quotation and citation omitted). With respect to the causal connection, a plaintiff must show that the protected conduct was a "'determinative—not merely motivating—factor in the employer's adverse employment decision.'" *Tyler v. University of Ark. Bd. of Trs.*, 628 F.3d 980, 985-86 (8th Cir. 2011) (quoting *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008)).

When the plaintiff demonstrates the elements of the applicable prima facie case, a presumption of discrimination arises. *Bone*, 686 F.3d at 954. The burden then shifts to the defendant to show that the adverse action was not a pretext for discrimination. *Id.* To overcome the presumption of discrimination, Defendant must articulate and show a legitimate, nondiscriminatory reason for the adverse action. *Id.*

**Analysis**

**The Section 1981 and Title VII Claims**

With respect to the claims of discrimination in Counts III and V, Plaintiff has alleged that she was discriminated against on the basis of race because her white co-worker, Patrice Crotty, was paid more than she for doing the same job. She also argues that Windom discriminated against her on the basis of race and/or sex by paying and promoting white women and black men more than he paid and promoted her.

11

Upon review of the record the Court concludes that Plaintiff has failed to establish a prima facie case of discrimination under Section 1981 or Title VII, because she has not shown that similarly-situated employees outside of her protected class were paid more than she was. Plaintiff asserts that Patrice Crotty, a white female CCS who was paid more than Plaintiff, is similarly situated. The Court cannot agree. Crotty held the same position as Plaintiff but was hired five years before Plaintiff. Therefore, Crotty is not similarly situated to Plaintiff for purposes of this action. *See Fields v. Shelter Mut. Ins. Co.,* 520 F.3d 859, 864 (8th Cir. 2008). Defendant is therefore entitled to summary judgment on Plaintiff's discrimination claims. *See Id.; see also Rivers v. Shinseki*, No. 4:10CV2187 RWS (E.D. Mo. Apr. 25, 2012).

Even if the Court were to conclude that Plaintiff met her burden of establishing a prima facie case, Defendants would still be entitled to summary judgment, because they have demonstrated on the basis of undisputed facts that the differences in salary among the CCSs were based upon the individual's education and experience and his or her seniority or years of service. On the record before the Court, Defendants have demonstrated that seniority, education and experience correlate directly with salary, and were the factors on which salary determinations were made. Defendants have therefore satisfied their burden to offer a legitimate, nondiscriminatory reason for the salary differences of which Plaintiff complains–namely, that Plaintiff had either less pertinent experience and education at the time of her hire, or less seniority, than those employees who earned more. As further demonstration of the correlation between years of service

and salary, the undisputed facts also show that all employees paid less than Plaintiff had fewer years of service and that a white female and male employees earned less than Plaintiff.

Plaintiff has not come forward with undisputed material facts indicating that the explanation offered and supported by Defendants is pretextual. At oral argument and in the briefing following oral argument, Plaintiff attempted to demonstrate pretext by asserting that Patricia Frost was paid less because she held a less responsible position. Upon review of the record, and in particular the exhibits attached to the parties' post-argument filings, it appears that Plaintiff can demonstrate only that Frost may have held a position other than CCS prior to 2008. The record establishes that beginning in the 2008 school year Frost held the same position and had the same responsibilities as Plaintiff. Plaintiff has not offered competent evidence to the contrary. In fact, Plaintiff testified in deposition on three occasions that Frost held the same position that she did at the time period relevant to her claims.

And even if the Court accepted that Frost held a different position than Plaintiff, explaining Frost's lesser salary, that fact would not undercut Defendants' undisputed evidence establishing Defendants' legitimate, nondiscriminatory reasons for paying Crotty and other CCSs more than Plaintiff.

On the basis of the foregoing, the Court concludes that Plaintiff has failed to demonstrate a prima facie case on Counts III and V that she was paid or promoted less than other similarly situated employees on account of her race or sex. In addition,

Defendants have offered and demonstrated on the basis of undisputed material facts a legitimate, non discriminatory reasons for the salary differences noted by Plaintiff, and Plaintiff has failed to offer relevant or competent proof of pretext.[2] Therefore, Defendants' motion for summary judgment with respect to Counts III and V will be granted.

**Retaliation**

In Count VI, her claim for retaliation under Title VII, Plaintiff asserts that Defendants "deliberately denied [her] the compensation due her in retaliation for her filing [of] discrimination charges against SLPS." (Doc. No. 48 ¶ 49.) Plaintiff also asserts that the retaliatory conduct, namely "denial of the compensation due her," began in 2008, and that she made complaints about sex discrimination by SLPS personnel as early as September 2008 and filed formal charges of discrimination on April 18, 2011, and August 9, 2011. (*Id.* ¶¶ 46&49.)

Defendants move for summary judgment, asserting that Plaintiff is unable to state a claim for retaliation because she cannot establish the required causation element or, in the alternative, that no adverse action was taken against her. Plaintiff asserts that she received a poor performance evaluation and was paid less than white female employees in the same position.

---

[2] Further, as noted above, Plaintiff has failed properly to controvert Defendants' statement of uncontroverted material facts, and under this Court local rule, Defendants are entitled to judgment for this reason, as well. *See Farnsworth v. City of Kansas City*, 863 F. 2d 33, 34 (8th Cir. 1988).

14

Upon review of the record, the Court concludes that Plaintiff cannot make a prima facie case for retaliation. First, Plaintiff has not demonstrated that an adverse action was taken against her. In 2009, after the filing of her 2008 complaints of discrimination Plaintiff received a salary increase just as she had in previous years. Apart from Windom's statements in her performance evaluation, she experienced no adverse action, as she was neither denied a salary increase nor disciplined.

Second, the record here is devoid of any evidence of the required causal connection between Plaintiff's 2008 or 2011 complaints of discrimination and the alleged failure to pay her a salary comparable to her white or male co-workers. *See Davis*, 685 F.3d at 684 (affirming grant of summary judgment on retaliation claim where the only evidence of causation was the plaintiff's statement in his verified complaint); *see also Gibson*, 670 F.3d at 857. The undisputed facts of record show that Plaintiff was not paid less or denied a salary increase in the time period immediately after lodging her complaints against Windom in 2008. Indeed, the pay discrepancy between Plaintiff and Crotty dates from 1999. The pay disparities between Plaintiff and the other CCSs paid more than she also pre-date any protected conduct by Plaintiff. As such, Plaintiff cannot establish a causal connection between the pay discrepancy and her complaints in 2008 and 2011. *Hervey v. Cnty. of Koochinching*, 527 F.3d 711, 723 (8th Cir. 2008) (holding that an inference of retaliation cannot be shown where the alleged adverse action predates the protected activity); *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1044 (8th Cir. 2007) (holding that "alleged retaliation which precedes protected conduct cannot

logically be used to show causation because a prior event cannot be caused by a later event").

In addition, because the undisputed evidence on the record shows that Windom had no authority to increase or decrease salaries, Plaintiff cannot show a causal link between her complaints about him, his statements in her performance evaluation, and the amount she is paid. Seniority and salary correlate across the board. Plaintiff has also failed to demonstrate a causal link between her complaints against Windom in 2008 and August 2011 and the fact that she earns less than the white female, Patrice Crotty, or those male CCSs, either white or black, who earn more than she. The record shows that regardless of race or gender the CCS employees with longer seniority, or greater experience or higher education, such as a masters degree, are paid more than those without such credentials.

On the basis of the foregoing the Court concludes that Defendants are entitled to summary judgment on Count VI, Plaintiff's claim for retaliation under Title VII.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to strike is **DENIED**. (Doc. No. 94.)

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike is **DENIED**. (Doc. No. 108.)

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment on Counts III, V, and VI is **GRANTED**. (Doc. No. 86.)

All claims against all parties now having been resolved, a separate Judgment shall be filed.

_/s/ Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 14th day of November, 2012.